[Cite as *Hanahan v. DPA Dev., L.L.C.*, 2021-Ohio-1212.]

## IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

JANICE M. HANAHAN, EXECUTOR
OF THE ESTATE OF JAMES P.
MCCLOSKEY, DECEASED

      Plaintiff-Appellant/Cross-
Appellee

v.

DPA DEVELOPMENT, LLC, et al.

      Defendants-Appellees/Cross-
Appellants

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Appellate Case No. 28864

Trial Court Case No. 2018-CV-1018

(Civil Appeal from
Common Pleas Court)

. . . . . . . . . . .

O P I N I O N

Rendered on the 9th day of April, 2021.

. . . . . . . . . . .

RICHARD L. CARR, JR., Atty. Reg. No. 0003180, 110 North Main Street, Suite 1000, Dayton, Ohio 45402
    Attorney for Plaintiff-Appellant/Cross-Appellee

SCOTT G. OXLEY, Atty. Reg. No. 0039285, 325 North Main Street, Suite 204, Springboro, Ohio 45066
    Attorney for Defendants-Appellees/Cross-Appellants

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Plaintiff-Appellant/Cross-Appellee, Janice M. Hanahan, as Executor of the Estate of James P. McCloskey, Deceased ("Hanahan"), appeals from the trial court's order on a motion to show cause that Hanahan filed. Defendants-Appellees/Cross-Appellants, David D'Amico and DPA Development, LLC, cross-appeal from the court's order, which found D'Amico and DPA in contempt and also filed an order reflecting the court's interpretation of the parties' settlement agreement.[1]

{¶ 2} According to Hanahan, the trial court erred by interpreting the parties' settlement agreement to include a term for repurchase by DPA that was void as against both law and policy. In turn, Defendants argue that the court erred by finding them in contempt and by inserting new terms into the settlement agreement.

{¶ 3} For the reasons discussed below, we conclude that the trial court erred in incorporating DPA's contractual right of first refusal into its order concerning the parties' settlement agreement. The right in question was unlimited in time and therefore violates the rule against perpetuities. In addition, the court erred when it added some terms to a separate right of refusal provision, because the terms in question were not implied in the settlement agreement, nor were they matters of custom and practice. However, the agreement can be modified by deleting the offending language and by including terms that were implied or supported by custom and practice. Accordingly, the trial court's judgment will be affirmed in part, reversed in part, and modified, and this cause will be remanded to the trial court for further proceedings.

---

[1] Cross-Appellants will be referred to collectively as "Defendants" or individually as "D'Amico" and "DPA." D'Amico is the principal member of DPA.

## I.   Facts and Course of Proceedings

{¶ 4} On March 5, 2018, Hanahan filed a complaint against Defendants, alleging that her decedent, James McCloskey (who had died in June 2017), had contracted to purchase real estate located at 424 Littell Avenue in Dayton, Ohio.   The purchase price of the real estate was $175,000, and DPA was the seller.   According to the written contract, the property was to be surveyed and split into two parcels.   Pursuant to the contract, McCloskey paid the full purchase price to DPA.

{¶ 5} Despite the fact that McCloskey paid for the property, it was never transferred to him.   After McCloskey's death, D'Amico claimed that DPA had no obligation to transfer the real estate to McCloskey or to his estate.   Defendants also allegedly changed the locks on the property and claimed possession.   The complaint contained eight claims: (1) breach of contract; (2) specific performance; (3) express trust; (4) constructive trust; (5) wrongful eviction; (6) trespass; (7) conversion; and (8) punitive damages.

{¶ 6} In April 2018, Defendants filed an answer to the complaint, in which they admitted that despite having received $175,000, they had failed to deliver title to the real estate.   Answer, p. 1, ¶ 1.   Defendants also admitted that they had changed the locks on the property.   *Id.*

{¶ 7} The case was initially set for trial in October 2018, but the trial was continued due to Defendants' failure to provide discovery, which required the court to issue an order compelling discovery.   The court also extended the discovery and summary judgment deadlines and set a new trial date for February 13, 2019.   In November 2018, Defendants moved for summary judgment on all claims, and Hanahan also moved for summary judgment, but only asked for partial judgment concerning her claim for specific

performance.

{¶ 8} In January 2019, the trial court granted Defendants' motion for summary judgment in part and overruled it in part.  The court also overruled Hanahan's partial motion for summary judgment.  *See* Decision, Order and Entry Overruling in Part and Granting in Part Defendants' Motion for Summary Judgment; Overruling Plaintiff's Motion for Summary Judgment.

{¶ 9} In discussing the submitted facts, the court noted that on November 7, 2013, DPA signed a contract to buy 424/428 Littell from the existing owner, Tim Rash. Subsequently, on January 31, 2014, Rash issued a warranty deed for the property to DPA.   In the meantime, DPA and McCloskey had signed a purchase agreement for 424 Littell on November 13, 2013.   However, at that time, neither DPA nor D'Amico owned 424 Littell.  *Id.* at p. 1-2.

{¶ 10} The parties intended to split the property, with McCloskey receiving the 424 parcel, and he paid DPA the full amount of the contract price ($175,000) for the parcel on December 21, 2013.   DPA then used this money for the down payment on its purchase from Rash.  *Id.* at p. 2.   Between 2013 and 2017, when McCloskey died, he used a building located at 424 Littell and stored some personal property there.  *Id.*   However, DPA was still the titled owner of 424/428 Littell when McCloskey died.  *Id.*

{¶ 11} The trial court granted summary judgment to DPA on the following claims: express trust and wrongful eviction.   In addition, the court granted summary judgment to D'Amico on claims for specific performance and breach of contract, and found the express trust claims and wrongful eviction claims against him moot.    Thus, the issues remaining for trial against both DPA and D'Amico were constructive trust, trespass, conversion, and

punitive damages. The claims against DPA for breach of contract and specific performance also remained.

{¶ 12} In February 2019, the court held a bench trial, and it issued a verdict on February 19, 2019. *See* Verdict Entry. In this entry, the court noted that it had granted Defendants' Civ.R. 50 motions on the counts for conversion and trespass.[2] *Id.* at p.1. The court then found in Hanahan's favor on the claims for breach of contract and specific performance, and it ordered specific performance as a remedy. *Id.* at p. 2. In addition, the court awarded Hanahan damages of $4,126.22. As an alternate remedy, the court also ordered DPA and D'Amico to hold $175,000 in a constructive trust for Hanahan's benefit. *Id.*

{¶ 13} On February 21, 2019, the trial court filed both a final judgment entry and an amended final judgment entry reflecting the above orders. Concerning the breach of contract claim, the court stated:

> On Plaintiff's First Cause of Action, Breach of Contract, the Court finds in favor of Plaintiff and against Defendant, DPA Development, LLC. The remedy awarded for Defendant DPA Development, LLC's breach of contract shall be specific performance as requested in Plaintiff's Second Cause of Action. Defendant, DPA Development, LLC, is ordered to convey the property known as 424 Littell, and more particularly identified on a survey drawing as indicated by Defendant, David D'Amico, on Exhibit 4B, as admitted in this case and incorporated herein by reference. Such

---

[2] This would actually have been a dismissal under Civ.R. 41(B)(2), which covers similar motions in nonjury trials.

conveyance shall be by DPA Development, LLC delivering to Plaintiff a transferable and recordable general warranty deed conveying to Plaintiff marketable title in fee simple as provided in the contract between Defendant, DPA Development, LLC and Plaintiff, Exhibit 6, as admitted in this case and incorporated herein.

Amended Judgment Entry, p. 1-2.

{¶ 14} On February 27, 2019, the trial court also issued findings of fact and conclusions of law in response to a motion for such that Defendants had previously filed on February 19, 2019.   No appeal was taken from the trial court's judgment entry or the amended judgment entry.

{¶ 15} On August 30, 2019, Hanahan filed a show cause motion asking that DPA show cause why the property had not been transferred in accordance with the court's order.   After continuing the matter twice, the court ultimately set a hearing for October 30, 2019.   On that date, the parties appeared and informed the court that they had reached the following agreement, which was read into the record by Plaintiff's counsel, Mr. Conway:

[1.] * * * The Defendant who owns the real estate subject of this case will provide a deed and a release of any mortgage within 30 days of the replat approval by the City of Dayton and will cooperate to any extent necessary in the obtaining of the replat approval.

[2.]   Following that, * * * DPA Development and the Plaintiff will then enter into a lease agreement by which they agree that between the two buildings of the owner, the DPA Development, and the building that's on the

property subject to this case – that area is a fairly narrow area, and the two have agreed that they will have cross-easement rights for ingress and egress across the other's property; not for parking, but to get to their own parking and buildings. * * *

[3.]   The lease will have a ten-year term for parking on five spaces to the east side of the Plaintiff's building that's the subject of this case.   That lease will be assignable.   And the Plaintiff will have the right of first refusal on the sale of the DPA property adjacent to the property subject of this case during that term.

[4.]   And also the Defendant will provide liability insurance over the five spaces on the east side * * * where they will have the right to park * * * cars there, for at least a million dollar limits for liability.

[5.]   The rent will be $150 a month for those five spaces, subject to a two percent per year, a two percent increase per month that's done once a year.   So after 12 months, it'll increase two percent.   After 24 months, it'll increase an additional two percent and so on, through the 10 years.

[6]   And the Defendant will maintain the property where the five spaces are including coating and repairing and any blacktop work and striping and so on.

[7]   And the Defendant and I will communicate and have responses, make responses within seven days, the Defendants' counsel [Mr. Oxley} and I [Mr. Conway]."

Transcript of Proceedings (Civil Motion Hearings) ("Tr."), p. 5-7.

{¶ 16} The only other items mentioned during the hearing were that the existing access and utility agreement would be part of the replat, that the five spaces would be marked, and that the parking lease agreement would be more properly characterized as a "license" agreement. The parties agreed on these points. *Id.* at p. 7-8 and 10.

{¶ 17} On March 9, 2020, the trial court sua sponte filed an order of dismissal, stating that "This case, having been reported settled by counsel, is conditionally dismissed without prejudice until such time as a final dismissal entry with prejudice is filed." Order of Dismissal, p. 1.

{¶ 18} Hanahan then filed a second show cause order on May 29, 2020, asking the court to hold Defendants in contempt for failing to convey the property, failing to hold $175,000 for Hanahan's benefit, and failing to pay damages of $4,126.22. Second Motion to Show Cause, p. 1. On June 26, 2020, the trial court held an evidentiary hearing during which it heard testimony from D'Amico, Oxley, and Conway. After hearing the evidence, the court found Defendants in contempt and made certain findings that were then reflected in a judgment entry filed on July 13, 2020.

{¶ 19} The court's July 13, 2020 order, in pertinent part, stated:

2. The parties shall execute a cross access easement at the rear of their respective buildings as depicted in the parties' previously submitted Joint Hearing Ex. i, attached hereto as **Exhibit A**. Neither Plaintiff nor Defendant shall block off or fence the access area.

3. The parties shall execute the Parking License Agreement submitted to the Court as a portion of Plaintiff's Exhibit 4.

4. Said Parking License Agreement, at paragraph 12(B) shall read

in full as follows:

> Licensor may assign its rights, obligations and/or interests with Licensee's prior written consent, which may not be unreasonably withheld. However, such assignment shall not infringe upon Licensee's Option to Purchase as specifically stated in paragraph 19 of the Purchase Agreement entered into and between DPA Development LLC and James McCloskey on or about November 18, 2013. Licensee acknowledges that Licensor, being an estate, will be transferring its right to the estate's heir, the James P. McCloskey Trust, and that said Trust will be transferring its rights to its beneficiary, Janice M. Hanahan, and/or an entity controlled by Janice M. Hanahan and/or the Trust and that all of such assignments are hereby consented to and do not trigger Licensee's said Option to Purchase.

It is the Court's decision that paragraph 12(b) of the Parking License Agreement, Exhibit 4 shall not include a provision that the Option to Purchase referenced in that paragraph shall be in effect only during the term of such License.

5. Plaintiffs shall have a Right of First Refusal to Purchase Real Estate as set forth in Plaintiff's Exhibit 8, which shall be executed by the parties in the form originally prepared by Plaintiff's counsel. The Court expressly finds that any additional terms or revisions to the Right of First

Refusal as set forth in the parties' prior agreement are implicit in such agreement and do not constitute a material deviation from the parties' agreement.

6.   As part of the parking license referenced in paragraph 3, above, Defendant shall at all times maintain a Comprehensive General Liability policy of insurance in the sum of $1 million per occurrence, naming Plaintiff as an additional insured.

7.   Defendant shall cooperate with Plaintiff in obtaining a re-plat of the property located at and including 424 Littell, Dayton, Ohio, as referenced in this Court's February 21, 2019 Amended Judgment Entry and Order, paragraph one, and Defendants shall execute a general warranty deed conveying such property to Plaintiff within thirty (30) days of the City of Dayton's approval of such replat.   Defendants shall also provide Plaintiff with a release of any mortgage or encumbrance on such property.

8.   Defendants shall pay to Plaintiff a license fee for the parking space leased pursuant to the license agreement referenced in paragraph 3, above, in the initial amount of $150 per month, retroactive from November 1, 2019, and continuing through the term of the License Agreement.   Such license fee shall increase 2% annually beginning November 1, 2020.

9.   Defendants DPA and D'Amico shall maintain the blacktop in the area subject to the licensing agreement at their expense, including repaving, coating, and striping.

10.   The sum of $4,126.22 referenced in paragraph three of this

Court's February 21, 2019 Amended Judgment Entry and Order and paid by Defendants pursuant to that Order shall be immediately negotiable by Plaintiff, which negotiation shall not constitute Plaintiff's waiver of any rights referenced therein. Payment by Defendants satisfies paragraph #2 of this Court's Amended Judgment Entry and Order of February 21, 2019.

11. All obligations imposed upon Defendants shall be performed by them within sixty (60) days following entry of this Order on the docket of this Court. If Defendants fail to fully comply with every provision in this Order within such time period, Defendants shall be fined the sum of $250 per day until Defendants are in full compliance herewith.

Order and Entry, p. 1-3. The court's order also contained a Civ.R. 54(B) certification. *Id.* at p. 4.[3]

{¶ 20} As indicated, both sides appealed from the July 13, 2020 order. The only transcript that has been filed is the transcript from the motion hearings. With these facts in mind, we will consider the assignment and cross-assignment of error.

## II. Right of Refusal

{¶ 21} Hanahan's sole assignment of error states:

The Lower Court Erred When It Interpreted the Parties' Agreement as Containing a Term Which is Void as Against Both Law and Policy.

{¶ 22} Under this assignment of error, Hanahan contends that the trial court's

---

[3] Even without the certification, the court's contempt order was a final appealable order. *Docks Venture, L.L.C. v. Dashing Pacific Group, Ltd.,* 141 Ohio St.3d 107, 2014-Ohio-4254, 22 N.E.3d 1035, ¶ 23.

decision incorrectly included an option to purchase provision freezing the property's value in perpetuity at its 2013 value. In response, Defendants argue that Hanahan waived this issue by failing to raise it in the trial court. On the merits, Defendants assert that the provision in question is a preemptive right rather than a purchase option and is valid under Ohio law.

{¶ 23} Civil contempt proceedings are intended "to secure the dignity of the courts and the uninterrupted and unimpeded administration of justice." *Windham Bank v. Tomaszczyk*, 27 Ohio St.2d 55, 58, 271 N.E.2d 815 (1971). "Civil contempt sanctions involve a conditional penalty, * * * 'designed for remedial or coercive purposes and are often employed to compel obedience to a court order. * * * [They] are characterized as violations against the party for whose benefit the order was made.' " *Docks Venture,* 141 Ohio St.3d 107, 2014-Ohio-4254, 22 N.E.3d 1035, at ¶ 15, quoting *State ex rel. Corn v. Russo*, 90 Ohio St.3d 551, 555, 740 N.E.2d 265 (2001). (Other citation omitted.)

{¶ 24} We review contempt orders for abuse of discretion. *City of Toledo v. State*, 154 Ohio St.3d 41, 2018-Ohio-2358, 110 N.E.3d 1257, ¶ 22. " 'Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary or unconscionable." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990), quoting *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 87, 482 N.E.2d 1248 (1985). "It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary. A decision is unreasonable if there is no sound reasoning process that would support that decision." *Id.*

{¶ 25} As pertinent in this appeal, two options are involved: one allowed DPA to

purchase Hanahan's interest in 424 Littell; the other permitted Hanahan to purchase DPA's adjacent property should it come up for sale. This assignment of error involves the first option, which was contained in paragraph 19 of the November 2013 purchase agreement between DPA and James McCloskey. This provision stated that:

> 19. <u>Option to Purchase</u>. Seller [DPA] shall have the option to purchase said real estate from Purchaser for the sum of $175,000.00 if, for any reason whatsoever, Purchaser, or Purchaser's representatives, assigns, executor or administrators decide to sell said real estate following the closing of this Agreement. Said option to purchase shall be exercised no later than the 30th day following Seller's receipt of Notice of Intent to Sell from Purchaser by 11:59 p.m. by giving written notice of Seller's intent to purchase to Lessor. The Closing of said Option shall occur within ninety (90) days of receipt of said written notice to purchase. The Closing shall occur at a time and place designated by mutual agreement of the parties.

Ex. A attached to the Complaint, p. 5 (also admitted at trial as Trial Exhibit 6).

**{¶ 26}** As indicated, this provision gave DPA a right to repurchase the property at a price of $175,000 after receiving notice from Hanahan of an intent to sell the property. No time limitations were placed on the exercise of this option. There is no dispute about the fact that the option was not specifically mentioned either when the case was tried or during the first show cause hearing, which was held on October 30, 2019. Tr. at p. 14 and 56.

**{¶ 27}** After the first show cause hearing, when the parties were trying to memorialize and sign the settlement agreement, DPA, through D'Amico, rejected any

attempt to limit the term of the option to purchase embodied in paragraph 19 of the original contract. Tr. at p. 42 and 51-52. This issue was then discussed during the second contempt hearing, and the court found, as noted, that Hanahan's ability to assign the parking agreement could not interfere with DPA's right to exercise the option to purchase Hanahan's property. Tr. at p. 72; Order and Entry (July 13, 2020), at p. 2. In other words, even if Hanahan assigned the rights in the parking license agreement to a third party, DPA would still be able to exercise its option to purchase the entire property if Hanahan later decided to sell the entire parcel.

{¶ 28} Defendants contend that Hanahan waived this issue by failing to raise it in the trial court. As a general rule, "errors which arise during the course of a trial, which are not brought to the attention of the court by objection or otherwise, are waived and may not be raised upon appeal." *Stores Realty Co. v. City of Cleveland, Bd. of Bldg. Standards & Bldg. Appeals*, 41 Ohio St.2d 41, 43, 322 N.E.2d 629 (1975). However, Hanahan specifically raised this matter during the second show cause hearing (when it had become a barrier to memorializing the settlement agreement) and therefore did not waive the issue. Furthermore, DPA also did not raise the issue at trial, nor did it raise the matter until after the first show cause hearing. Tr. at p. 49-50.

{¶ 29} We note that the first show cause proceeding was brought specifically to require DPA to convey the property as was required by the trial court's amended judgment entry. *See* First Motion to Show Cause, p. 1. Instead of raising the purchase option during this hearing, DPA entered into a settlement agreement that did not mention the option and instead focused on a parking licensing agreement. DPA then chose to wait for months before raising the issue when the parties were drafting the licensing

agreement. Therefore, if anyone waived the matter, it was DPA, who did not raise the issue with the court during the trial or during the first contempt hearing. Nonetheless, both sides discussed the issue during the second show cause hearing, and it was properly before the court at that time, giving the court the opportunity to rule on the matter.

{¶ 30} Turning to the merits of the issue, Hanahan argues that the unlimited term of the option to purchase in paragraph 19 violates the rule against perpetuities. Defendants contend that the term was in the original contract and that because Hanahan asked for specific performance of the contract, she is bound by its terms.

{¶ 31} " 'Specific performance of contracts is a matter resting in the sound discretion of the court, not arbitrary, but controlled by principles of equity, on full consideration of the circumstances of each particular case.' " *Sandusky Properties v. Aveni*, 15 Ohio St.3d 273, 275, 473 N.E.2d 798 (1984), quoting *Spengler v. Sonnenberg*, 88 Ohio St. 192, 203, 102 N.E. 737 (1913).

{¶ 32} " 'Specific performance will not be decreed where the terms of the contract are indefinite as to any material feature to be performed by either party, or if they are left open for future determination by the parties, or if they are so uncertain or equivocal in their meaning that the intention of the parties in regard thereto cannot be determined. * * * *It is the contract as the parties have made it and in its precise terms, and not otherwise, of which the court decrees performance.* Any other performance would not be specific.' " (Emphasis added.) *Lyon v. Jackson*, 72 Ohio Law Abs. 5, 7, 132 N.E.2d 779 (2d Dist.1955), quoting 37 Ohio Jurisprudence, Section 21, at 28. *See also Harley E. Rouda & Co. v. Springtime Co.*, 49 Ohio App.2d 49, 55, 359 N.E.2d 4504 (10th Dist.1975) (noting that "[w]hen a party sues for specific performance, he, in substance,

admits that the contract remains in effect and seeks performance").

{¶ 33} There is no allegation here that paragraph 19 was uncertain or ambiguous, and the trial court therefore correctly looked to the contract terms in awarding specific performance. However, as Hanahan points out, the term's existence in the contract does not necessarily mean it is enforceable if it violates the law.

{¶ 34} Before we specifically discuss the rule against perpetuities, we will consider a point raised in Defendants' Reply Brief. Defendants argue that Hanahan fails to understand the differences between options to purchase and DPA's presumptive right of having the first refusal to purchase the property, which is a right that is "[c]learly recognized and valid under Ohio law." Defendants' Reply Brief, p. 6.

{¶ 35} Defendants are correct insofar as they maintain that options to purchase and rights of first refusal are not the same thing. "An option differs from a preemptive right since an option gives the grantee the power to compel the owner to sell the property. A preemptive right merely requires the owner to offer the property first to the holder of the right." *Stratman v. Sheetz*, 60 Ohio App.3d 71, 73, 573 N.E.2d 776 (1st Dist.1989). Thus, the "option" here is more properly classified as a right of first refusal. Nonetheless, like an option to purchase, "[a] right of first refusal in the sale of property is subject to the statute against perpetuities." *Hamilton Cty. Bd. of Commrs. v. Cincinnati*, 154 Ohio App.3d 504, 2003-Ohio-5089, 797 N.E.2d 1027, ¶ 19 (1st Dist.), citing *Schafer v. Deszcz*, 120 Ohio App.3d 410, 414, 698 N.E.2d 60 (6th Dist.1997). *Accord Natl. City Bank v. Welch*, 188 Ohio App.3d 641, 2010-Ohio-2981, 936 N.E.2d 539, ¶ 13 (10th Dist.).

{¶ 36} Thus, as Hanahan points out, Defendants' observation is a "classic 'distinction without a difference.' " Hanahan's Reply Brief, p. 4. The issue here is not

whether rights of refusal in general are enforceable in Ohio. Admittedly, they are. The issue is whether this particular right of refusal is void under the rule against perpetuities.

{¶ 37} "The fundamental purpose of the rule against perpetuities, as it developed in common law, was to prevent restraints on the alienation of property which might be perpetual or unreasonably long, while permitting restraints limited within the strict period of the rule, in recognition of a property owner's rights to the use and disposition of his property." *Quarto Mining Co. v. Litman*, 42 Ohio St.2d 73, 76, 326 N.E.2d 676 (1975). "A bare option exercisable outside the period of the rule is generally held to be void as an unreasonable restraint upon alienation." (Citations omitted.) *Id*. at 77.

{¶ 38} In *Quarto Mining*, the court commented that, "[a]s the courts have recognized, an option to purchase land can be a severe restraint on the free alienability of the property. The fundamental defect of a perpetual option is that the right to alienate the property is divided into two roughly equivalent interests, and these interests may be so antagonistic as to effectively prevent the transfer of a fee simple estate. Where a definite option price is stated, an effective ceiling price is imposed on the property, above which no one may, with safety, purchase the property; the holder of the option in such case holds the effective power to alienate. Development and improvement of the property may thereby be severely retarded, for the existence of the option threatens the developer with loss of the profit from his efforts if the option is exercised. The possibility of fluctuation in land values and in the buying power of the dollar must further render imponderable the safety of any purchase of property encumbered by an option." *Id*. at 77.

{¶ 39} As a result, the court stated in *Quarto Mining* that "[b]ecause of this potential

for the indefinite suspension of the 'practical' power of alienation, and because the exercise of the option is so likely to depend upon changes in market value and level of development of the property over time, the courts have generally held such an option to be a non-vested contingent equitable interest in property, subject to the rule against perpetuities." *Id.* *See also Blair v. Topovski*, 9th Dist. Wayne No. 1800, 1982 WL 2728, *2 (Sept. 1, 1982) (noting that "a fixed price option, unlimited in duration, which requires the sale of a fee simple interest at a price less than its fair market value is an invalid restraint on alienation").

{¶ 40} In the case before us, paragraph 19 of the original contract granted DPA an unlimited right to purchase the property for $175,000 upon receiving notice of the intent of McCloskey or his "representatives, assigns, executor or administrators" to sell the property. There was no time limitation on DPA's right, and the restriction of the purchase price of $175,000, regardless of the land's value or the offer McCloskey or his assigns might receive, falls afoul of the principles espoused in *Quarto Mining*. DPA is also not a "person," and there are no restrictions on its existence. *Compare Stratman*, 60 Ohio App.3d at 73-74, 573 N.E.2d 776 (preemptive right of first refusal was personal to the grantee ("a life in being") and extended only to his lifetime, thereby not violating the rule). There is no restriction on the life of corporations or LLCs.

{¶ 41} In addition to adhering to the common law doctrine, Ohio has enacted a statute against perpetuities. This statute, with exceptions not applicable here, states that "no interest in real or personal property shall be good unless it must vest, if at all, not later than twenty-one years after a life or lives in being at the creation of the interest." R.C. 2131.08(A). As originally enacted in 1937, the statute used what is called the "orthodox

rule." This rule "applies only to indestructible contingent interests, which it renders invalid at the time of their creation if, at that time, it is possible that they may remain contingent longer than lives then in being and twenty-one years thereafter. In a particular case, the single question to have been determined was whether the prescribed contingency or event may not arise until after the time allowed by law. If it may happen beyond the established time limit, the interest was void." *SCN Land & Mineral Co. v. N. Am. Coal Corp.*, 7th Dist. Monroe No. 648, 1989 WL 61791, *2 (June 8, 1989), citing 41 Ohio Jurisprudence 3d 613-614, Estates, Etc., Section 219.

{¶ 42} When R.C. 2131.08 was amended in 1967, subsection (C) was added. *Id.* at *2. This section (which has not been subsequently amended), states that:

> Any interest in real or personal property that would violate the rule against perpetuities under division (A) of this section shall be reformed, within the limits of the rule, to approximate most closely the intention of the creator of the interest. In determining whether an interest would violate the rule and in reforming an interest, the period of perpetuities shall be measured by actual rather than possible events.

R.C. 2131.08(C). This is called the "wait and see doctrine." *SCN Land & Mineral* at *3. *See also* Committee Notes accompanying R.C. 2131.08. The "approach allows the exercise of a theoretically violative interest, when the exercise occurs in a period not prohibited by the rule." *Terry Homes, Inc. v. Crocker*, 9th Dist. Medina No. 2931-M, 1999 WL 1215108, *2 (Dec. 8, 1999).

{¶ 43} The "wait and see doctrine" is not useful here, because the exercise of the theoretically violative interest has not occurred. For example, in *Hamilton Cty. Bd.*, a city

actually exercised its right of first refusal in 1997, "within the life of one in being" at the time the right was created in 1981. *Hamilton Cty. Bd.*, 154 Ohio App.3d 504, 2003-Ohio-5089, 797 N.E.2d 1027, at ¶ 22. The court therefore held that the interest "would not have failed due to the rule against perpetuities." *Id.*

**{¶ 44}** Given the facts that currently exist, no actual events are available to measure the period of perpetuities, and it is impossible to determine that DPA's unlimited right of first refusal (the "option to purchase" in paragraph 19) would be exercised in the time allowed by the rule. Therefore, while the trial court did not err in referring to the contract of purchase, its decision was not based on sound reasoning with respect to including the option to purchase in its July 13, 2020 order. Specifically, DPA's right was not enforceable because it violated the rule against perpetuities.

**{¶ 45}** Accordingly, Hanahan's sole assignment of error is sustained.

### III. Error in Adding to the Settlement Agreement

**{¶ 46}** DPA asserts a cross-assignment of error, which states:

The Trial Court Erred in Finding DPA in Contempt Whereby There Was a Settlement Agreement in Place and the Trial Court Erred by Inserting Language and Re-Writing the Settlement Agreement Terms as Agreed Between the Parties.

**{¶ 47}** In the statement of this assignment of error, Defendants purportedly raise two issues: (1) the trial court's error in finding DPA in contempt; and (2) the court's error in adding language to the parties' settlement agreement. However, Defendants have addressed only the latter point in their brief. They have not discussed the show cause

motion, which raised several matters, including their failure to convey the property, their failure to hold the sum of $175,000 for Hanahan's benefit, and their failure to pay Hanahan $4,126.22 – none of which involved the specific complaint that Defendants have about the court's interpretation of the settlement agreement. *See* Second Motion to Show Cause (May 29, 2020), p. 1. Since Defendants failed to address the court's contempt finding, we conclude they have abandoned this aspect of their cross-assignment of error.

{¶ 48} As noted in the statement of facts, the parties agreed during the first show cause hearing that Hanahan would be given a right of first refusal if DPA decided to sell the part of the property adjacent to Hanahan's parcel. This is the second option involved in this appeal.

{¶ 49} Defendants further agreed during the first show cause hearing that the term for this right would be ten years, the same term as the lease for the five parking spaces. Tr. at p. 6. The parties did not outline any further terms for the right of refusal. However, during subsequent negotiations, Hanahan proposed what was labeled and admitted as Exhibit 8 at the second contempt hearing. Tr. at p. 27-28 and 66-67. This proposal included terms that were initially proposed by Hanahan and sent to DPA. The trial court added these terms to its order, concluding that they were "implicit" in the parties' settlement agreement and did not "constitute a material deviation from" the agreement. Order and Entry (July 13, 2020), at p. 2.

{¶ 50} The added terms were that if DPA received an offer to purchase its property, DPA was required to promptly give notice to Hanahan. Hanahan would then have 10 business days to purchase the property at a price equal to the lesser of the offer's price or the property's appraised value. The appraisal would be done by a qualified appraiser

acceptable to both parties and paid for equally by the parties. Hanahan would then pay the purchase price in cash at a closing held within 90 days after the parties received the appraisal. Finally, if Hanahan failed to exercise the right of first refusal, DPA would be entitled to sell the property in substantial accordance with the offer's terms; if DPA did not sell in substantial accordance with the offer's terms, then the property would remain subject to Hanahan's right of first refusal. *See* Exhibit 8.

{¶ 51} According to Defendants, the trial court erred in adding these items because they are not supported by the record and were never negotiated. In response, Hanahan argues that the court was permitted to add terms that are consistent with the general operation of rights of first refusal.

{¶ 52} "[A] settlement agreement is a contract designed to terminate a claim by preventing or ending litigation." *Continental W. Condominium Unit Owners Assn. v. Howard E. Ferguson, Inc.*, 74 Ohio St.3d 501, 502, 660 N.E.2d 431 (1996). These kinds of agreements "are valid and enforceable by either party," and "are highly favored in the law." *Id.* "Where the parties in an action * * * voluntarily enter into an oral settlement agreement in the presence of the court, such agreement constitutes a binding contract." *Spercel v. Sterling Industries, Inc.*, 31 Ohio St.2d 36, 285 N.E.2d 324 (1972), paragraph one of the syllabus.

{¶ 53} " 'An agreement is enforceable if it encompasses the essential elements of the bargain.' " *Ruffian, L.L.C. v. Hayes*, 10th Dist. Franklin No. 09AP-948, 2011-Ohio-831, ¶ 17, quoting *Mr. Mark Corp. v. Rush, Inc.*, 11 Ohio App.3d 167, 169, 464 N.E.2d 586 (8th Dist.1983) (Other citation omitted.) "If less essential terms are omitted from an agreement, they may be resolved by 'later agreement or judicial resolution.' " *Id.* Where

parties have intended to be bound, "the court should not frustrate this intention, if it is reasonably possible to fill in some gaps that the parties have left, and reach a fair and just result." *Litsinger Sign Co. v. Am. Sign Co.*, 11 Ohio St.2d 1, 14, 227 N.E.2d 609 (1967). *Accord Reed Elsevier, Inc. v. Carter*, 2017-Ohio-7513, 96 N.E.3d 1213, ¶ 15 (2d Dist.).

{¶ 54} "Where the meaning of terms of a settlement agreement is disputed, or where there is a dispute that contests the existence of a settlement agreement, a trial court must conduct an evidentiary hearing prior to entering judgment." *Rulli v. Fan Co.*, 79 Ohio St.3d 374, 683 N.E.2d 337 (1997), syllabus. As indicated, the trial court did so here and then added several terms to the right of refusal.

{¶ 55} The original settlement agreement read into the record in October 2019 stated, in pertinent part, that:

> The lease will have a ten-year term for parking on five spaces to the east side of the Plaintiff's building that's the subject of this case. That lease will be assignable. And the Plaintiff will have the right of first refusal on the sale of the DPA property adjacent to the property subject of this case during that term.

Tr. at p. 6.

{¶ 56} There is no question that the parties intended to be bound by this agreement. The essential terms, that Hanahan was entitled to a right of first refusal on the sale of DPA's property, the location of the property, and the term of the right (10 years) were all outlined. These terms did not include the basis for the price at which the right was to be exercised or matters like the time for closing.

{¶ 57} The requirements that DPA give Hanahan prompt notice of a purchase offer

and that Hanahan respond within 10 business days are reasonable and not material. In addition, the provision that Hanahan would pay the purchase price in cash at a closing to be held within 90 days of an appraisal, regardless of the terms in the offer, is also not of great significance. However, the provision that Hanahan pay a "purchase price equal to the lesser of (i) the price contained in the Offer, or (ii) the appraised value of the Property (pursuant to an appraisal paid for equally by the parties from a qualified appraiser acceptable to the parties)" is not something that can reasonably be implied from the evidence and settlement agreement. The effect of this provision would be that, even if DPA received a higher offer for the property, it would be required to sell the property to Hanahan at a lesser appraised amount. Such a restriction would be of concern to a seller.

{¶ 58} "When the parties have agreed about issues critical to the transaction, the courts will determine the meaning of ambiguous terms according to the parties' mutual understanding, the custom and practice in the trade or community, or other established legal principles. * * * Similarly, the courts will supplement the parties' express or implied agreement about those essential elements with other terms implied by custom and practice or consonant legal doctrines." (Citations omitted.) *Mr. Mark Corp.*, 11 Ohio App.3d at 167, 464 N.E.2d 586.

{¶ 59} A reasonable provision is that Hanahan be required to *match* the purchase price of a third-party offer if she exercised her right of refusal. In fact, this type of provision is typical in cases involving a right of first refusal. For example, in *Hamilton Cty. Bd.,* 154 Ohio App.3d 504, 2003-Ohio-5089, 797 N.E.2d 1027, the right of refusal provided that "if the state offered the real estate for sale at its appraised market value,

then the city had a right of first refusal for the purchase of the property at its appraised value." *Id.* at ¶ 3. *See also Terry Homes*, 9th Dist. Medina No. 2931-M, 1999 WL 1215108, at *1 (the party exercising its right of first refusal must match the offer the owner has received). This idea is also supported by custom and practice. *See Latina v. Woodpath Dev. Co.*, 57 Ohio St.3d 212, 214, 567 N.E.2d 262 (1991), fn.1 (noting expert testimony that "the words 'right of first refusal' have a special meaning in the real estate industry – the right to match a third-party offer").

**{¶ 60}** As noted, the remaining provision the trial court added essentially allows DPA to sell the property in substantial accordance with the offer if Hanahan fails to exercise the right of refusal; if DPA fails to do so, however, the property is still subject to the right of first refusal. *Id.* at Ex. 8. Research discloses no basis for finding that such a provision is used as a matter of custom and practice in situations like the present. It is also not implicit in the judgment. Accordingly, the trial court was not warranted in adding this term to the agreement.

**{¶ 61}** In light of the preceding discussion, DPA's cross-assignment of error is sustained in part and overruled in part. Under App.R. 12(A)(1), we are permitted to modify the judgment of the trial court. *See also Dayton Women's Health Ctr. v. Enix*, 2d Dist. Montgomery No. 10579, 1988 WL 131905, *6-7 (Dec. 5, 1988) (modifying a trial court's permanent injunction entry by removing paragraphs and inserting other language).

**{¶ 62}** Consistent with that authority, paragraph 5 of the July 13, 2020 Order and Entry of the trial court is modified to read as follows:

Plaintiffs shall have a Right of First Refusal to Purchase Real Estate as set

forth as follows:

Any time after and continuous from the date of this Agreement until the ___ day of _____, 20___, Seller receives an offer (an "<u>Offer</u>") to purchase the Property, which Seller is willing to accept, Seller shall promptly, upon receipt of the Offer, transmit notice and a true copy thereof to Buyer, and Buyer shall have the right, exercisable by notice to Seller (the "<u>Notice of Exercise</u>") given within ten (10) business days after such notice, to purchase the Property at a purchase price equal to the price contained in the Offer; provided, however, that, regardless of the payment terms contained in the Offer, Buyer shall pay the purchase price in cash at the closing (which closing shall be within 90 days of the date the Buyer exercises the right to purchase).

The Court expressly finds that any additional terms or revisions to the Right of First Refusal as set forth in the parties' prior agreement are implicit in such agreement and do not constitute a material deviation from the parties' agreement.

{¶ 63} As a final matter, whether the contractual term voided by sustaining Hanahan's First Assignment of error is severable to allow enforcement of the agreement is a matter for the trial court to consider on remand. Further, since Plaintiff's Exhibit 8, as incorporated in the entry, was undated, the trial court and parties will decide on remand what date to insert into the modified portion of the parties' agreement.

## V. Conclusion

{¶ 64} Hanahan's sole assignment of error is sustained, and DPA's sole cross-

assignment of error is sustained in part and overruled in part.   This cause will be reversed in part and affirmed in part, and remanded to the trial court for further proceedings consistent with this opinion.   On remand, the trial court will remove all references in its order to the "option to purchase" contained in paragraph 19 of the original purchase contract between DPA and McCloskey.   The trial court's July 13, 2020 Order and Entry is also modified as indicated above.

. . . . . . . . . . . . .

DONOVAN, J. and EPLEY, J., concur.

Copies sent to:

Richard L. Carr, Jr.
Scott G. Oxley
Hon. Timothy N. O'Connell