[Cite as *Waterfront, L.L.C. v. Shia*, 2022-Ohio-3259.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| WATERFRONT, LLC | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 29377 |
| | : | |
| v. | : | Trial Court Case No. 2019-CV-4765 |
| | : | |
| JOHNNA SHIA, et al. | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 16th day of September, 2022.

. . . . . . . . . . .

DAVID M. RICKERT, Atty. Reg. No. 0010483, 110 North Main Street, Suite 100, Dayton, Ohio 45402
    Attorney for Plaintiff-Appellee

JOHNNA M. SHIA, Atty. Reg. No. 0067685, P.O. Box 145, Springboro, Ohio 45066
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

EPLEY, J.

{¶ 1} Defendant-Appellant Johnna Shia appeals from a judgment of the Montgomery County Court of Common Pleas which enforced an on-the-record settlement agreement and awarded attorney fees to Plaintiff-Appellee Waterfront, LLC. For the reasons that follow, the judgment of the trial court will be affirmed.

I.      **Facts and Procedural History**

{¶ 2} On August 7, 2013, Shia acquired title to real estate – a house on two contiguous plots of land – one located in Montgomery County and one in Warren County. A separate mortgage was recorded in each county, and Shia executed a promissory note to Waterfront. The note was an initial three-year term with an option for a two-year extension, and the mortgage total was $231,686.33, to be paid in monthly installments of $1,435, as recorded on August 9, 2013.

{¶ 3} On October 14, 2019, Waterfront filed a two-count complaint for damages and foreclosure after Shia made only "sporadic" payments under the note. Pursuant to the contract, Waterfront elected to declare all the indebtedness due immediately (August 1, 2018), and Shia failed to make that payment. According to the complaint, the total amount due was $235,040.64 with interest at the rate of 10% per annum from August 1, 2019 forward, plus a late fee of $25 for each payment not timely made. In the case of default, the terms of the note also called for Shia to pay attorney fees and costs associated with collecting on the note and mortgages.

{¶ 4} Shia filed an answer with affirmative defenses and counterclaims on December 2, 2019. An amended answer was submitted to the court on February 24,

2020.

{¶ 5} On January 27, 2021, after more than a year of motion practice and failed settlement attempts, the case proceeded to trial. Part-way through, however, the parties reached a settlement. The attorney for Waterfront read the terms on the record (essentially reinstating the loan agreement with several additional provisions), and both parties, including Shia herself, stated that the terms of the agreement were acceptable. Following the trial date and oral settlement agreement, all three attorneys for Shia withdrew from representing her, with one citing "a complete breakdown in the attorney-client relationship and in communication[.]"

{¶ 6} After several weeks of apparent inaction by the parties to memorialize the oral agreement, the trial court ordered the parties to submit a "settlement memo" to "advise the Court on what happened with the settlement." February 11, 2021 Entry.

{¶ 7} On February 24, 2021, Shia filed a motion asking the court to stay the performance on the terms provided on the record "until certain issues concerning the settlement are reviewed by [the] court." In the motion, Shia appeared to be unhappy with some of the previously negotiated and agreed-upon terms, including "automatic payment from Defendant's bank account directly into Plaintiff's bank account." She also contended that "Plaintiff's written draft fails to mention any material term promised to Defendant during negotiations and these terms were in exchange for what she understood would be the modified amount of the loan." Finally, she stated that she was "not certain that her interests and rights will be protected, nor that the material terms promised during negotiations will be made part of the settlement." February 24, 2021 Motion to Stay.

{¶ 8} On March 1, 2021, both parties filed settlement memoranda as ordered by the court. Waterfront noted that Shia had "neither responded to her counsel or Waterfront's counsel concerning the draft Settlement Agreement nor ha[d] she tendered the February 2021 payment." Shia, on the other hand, filed a memorandum stating that she had not had enough time to contemplate the agreement on the day of trial, that she did not believe her counsel had represented her best interests during negotiations, and that she had felt she had no choice but to agree to Waterfront's terms. She told the court:

> At one point, counsel stood next to me shaking in anger with pen to paper waiting for me to tell him how much of my savings was I willing to give up to stay in my house. I could not answer. I did not answer. I was paralyzed.

Defendant's March 1, 2021 Motion.

{¶ 9} On March 4, 2021, the trial court denied Shia's motion for a stay. The record indicates that Shia had failed to comply with the terms of the agreement and thus, on March 5, 2021, Waterfront filed a "motion to enforce settlement" and a "motion to show cause." An evidentiary hearing on the motions was held on April 20, 2021, and the trial court ruled that the parties had entered into an enforceable settlement agreement and that Shia had breached it. Finally, Waterfront filed a motion for an award of attorney fees on May 4, 2021. The court granted the award on July 26, 2021.

{¶ 10} Shia has filed an appeal raising three assignments of error, and we will address them in a manner that facilitates our analysis.

## II.     The Settlement Agreement

{¶ 11} In her first and second assignments of error, Shia objects to the oral

settlement agreement and the trial court's enforcement of it. While the exact arguments are somewhat unclear, we believe they can be distilled down to the following: First, she believes that the settlement agreement was not a binding contract, and second, she asserts that the final version, as adopted by the court, was not supported by the record. We disagree.

<u>The settlement agreement was valid and enforceable</u>

{¶ 12} "A settlement agreement is a contract designed to terminate a claim by preventing or ending litigation." *Hanahan v. DPA Dev., LLC*, 2021-Ohio-1212, 171 N.E. 3d 462, ¶ 52 (2d Dist.), quoting *Continental W. Condominium Unit Owners Assn. v. Howard E. Ferguson, Inc.*, 74 Ohio St.3d 501, 502, 660 N.E.2d 431 (1996). The agreements are valid and enforceable by both parties and are favored in the law. *Id.*

{¶ 13} Where the parties in an action voluntarily enter into an oral settlement agreement in the presence of the court, the agreements are binding contracts. *Id.*; *accord Spercel v. Sterling Industries, Inc.* 31 Ohio St.2d 36, 285 N.E.2d 324 (1972). Further, "[w]here a settlement agreement is voluntarily entered into in the presence of the trial court, and made a part of the record, it may not be repudiated by either party, and will be summarily enforced." *Seng v. Seng*, 12th Dist. Clermont No. CA2007-12-120, 2008-Ohio-6758, ¶ 9. The rationale is that permitting a party to unilaterally repudiate a settlement agreement would render the entire settlement process a nullity. *Cellura v. Great Lakes Exploration, Ltd.*, 8th Dist. Cuyahoga No. 50230, 1986 WL 2941, *2 (Mar. 6, 1986).

{¶ 14} After the parties failed to come to an agreement beforehand, the court encouraged the parties to pause calling witnesses and make a concerted effort to reach

a settlement agreement on the first day of the trial. The parties agreed, believing they were close, and they worked out a deal during the lunch hour. Once back on the record, counsel for Waterfront read the agreed-upon terms into the record, which included the following:

- Current note will be continued as to all its terms except for items modified on the record

- Current loan will be modified to show a face amount of $250,000 and if Shia pays the loan on time, it will be satisfied by the payment of the principal amount of $225,000

- Shia will release $10,000 from escrow that will immediately show a reduction of the principal of the loan

- Loan will have a four-year life with a balloon payment at the end

- Payments of $1,435 per month (same as current note) will be automatically withdrawn

- If payment is not automatically received, Waterfront will give written notice

- If Shia is in default under the loan, she will have 30 days to cure

- If further action is needed to enforce the terms of the note, the winning party will get their fees paid

- There will be a release with prejudice of all claims asserted in the litigation

Trial Tr. at 54-55.

{¶ 15} The court then inquired if all parties agreed. The attorneys for Waterfront and Shia stated their assent, and Shia affirmed by stating, "Yes. Yes, Your Honor." Trial Tr. at 56. The record is unambiguous that all parties – at this point – were satisfied with the settlement agreement.

{¶ 16} Nevertheless, Shia makes several arguments that call into question the agreement's validity. First, she contends that there was no "meeting of the minds" and thus there could be no valid contract. A "meeting of the minds" traditionally referred to "actual assent by both parties to the formation of a contract, meaning that they agree on the same terms, conditions, and subject matter." *Black's Law Dictionary* (11th ed. 2019). In modern contract law, this is oftentimes called "mutual assent," which is an "agreement by both parties to a contract, usually in the form of offer and acceptance." *Black's Law Dictionary* (11th ed. 2019). Mutual assent is determined by the apparent intentions of the parties as shown by their actions. *Id.* Shia's argument in this regard fails, as the transcript demonstrates that both parties agreed to the terms read into the record after extensive negotiations during a break in the trial. A meeting of the minds led to new terms being introduced on top of the long-established terms of the original note to which the parties had previously agreed.

{¶ 17} Next, we understand Shia's argument to be that the agreement should not be binding because it was not reduced to writing. This claim fails for two reasons. Initially, the settlement agreement was not immediately put into writing because Shia refused to sign off on it after agreeing to the terms during the trial. This was invited error. Under the "invited error doctrine," an appellant cannot attack a judgment for errors committed by

himself or herself; for errors that the appellant induced the court to commit; or for errors into which the appellant either intentionally or unintentionally misled the court, and for which the appellant was responsible. *State v. Minkner*, 2011-Ohio-3106, 957 N.E.2d 829, ¶ 24 (2d Dist.). The settlement agreement was not reduced to writing until later because of Shia's actions.

{¶ 18} In addition, Ohio Supreme Court has held that an oral settlement agreement is enforceable if there is sufficient particularity to form a binding contract. *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, ¶ 15. In this case, Waterfront's attorney read into the record approximately ten details that would be added to the conditions of the original note that had been in place since 2013. We conclude that there was sufficient particularity to form a contract. *See also Hanahan,* 2021-Ohio-1212, 171 N.E. 3d 462, at ¶ 52 (where the parties in an action voluntarily enter into an oral settlement agreement in the presence of the court, the agreement is a binding contract).

{¶ 19} Shia also invokes the Statute of Frauds to argue that the settlement agreement should not be binding. This assertion is also unavailing because in-court settlement agreements do not need to comply with the statute of frauds. *Wilson v. Wilson*, 2018-Ohio-3820, 111 N.E.3d 110, ¶ 37 (6th Dist.); *Smith v. ABN AMRO Mtge. Group Inc.*, 434 Fed.Appx 454, 463 (6th Cir.2011) ("Ohio law generally treats settlement agreements that are read into the record as outside the statute of frauds."). Courts have reasoned this is because settlement agreements, in and of themselves, do not assign or grant a lease, estate, or interest of land. The real estate transfer is merely a by-product of the agreement to settle. *Id.*; *see also Rothfusz v. Fitzgerald*, 8th Dist. Cuyahoga No. 64526, 1994 WL

30436 (Feb. 3, 1994).

{¶ 20} Finally, Shia argues that because what was read into the record did not contain all the terms of the settlement, the trial court erred by ordering others into the agreement. " 'An agreement is enforceable if it encompasses the essential elements of the bargain.' " *Ruffian, LLC v. Hayes*, 10th Dist. Franklin No. 09AP-948, 2011-Ohio-381, ¶ 17, quoting *Mr. Mark Corp. v. Rush Inc.*, 11 Ohio App.3d 167, 169, 464 N.E.2d 586 (8th Dist.1983). In a contract that is not for goods, the essential terms are, usually, the parties and the subject matter. *Mantia v. House*, 2008-Ohio-5374, 900 N.E.2d 641, ¶ 9 (2d Dist.). If non-essential terms are omitted from the agreement, they may be resolved by later agreement or judicial resolution. *Hanahan* at ¶ 53.

{¶ 21} In this case, nearly every term – essential or otherwise – was known and expressed at the time the settlement agreement was read into the record on January 27, 2021. The terms of the original note were incorporated by reference, and the additional and/or modified terms were read into the record with agreement from both Waterfront and Shia. The only term that was not included was a February 1, 2021, start date – a date that, according to the record, was known by the parties at the time of the trial.

{¶ 22} But even if important terms were omitted from the agreement initially, Shia had the ability to negotiate final terms, but she failed to do so. It appears to this Court, as it did to the trial court, that both parties voluntarily entered into the settlement agreement at trial, but at some point thereafter, Shia decided the terms were no longer in her best interest and attempted to renege on them. However, a court may accept an in-court settlement agreement "even if one party tries to repudiate it so long as the court is

convinced that the agreement was not procured by fraud, duress, overreaching, or undue influence." *Walther v. Walther*, 102 Ohio App.3d 378, 383, 657 N.E.2d 332 (1st Dist. 1995). The trial court noted (and we agree) that the agreement was struck between two sophisticated parties – Shia herself is an attorney – and that a change of heart is not a ground to set aside a settlement agreement. *Id.* We conclude that the settlement agreement was valid and enforceable.

### The agreement adopted by the court was supported by the record

**{¶ 23}** Shia also asserts that the final agreement set forth by the trial court was inconsistent with what was negotiated by the parties and was unsupported by the record. That is not the case. The only difference between the terms of the settlement agreement read into the record at the January 27, 2021 trial and that included in the court's final judgment entry was the starting date of February 1, 2021, which the record seems to indicate was inadvertently left out of the terms read at trial. As to any other perceived inconsistencies, the terms of the then-current note controlled anything that was not explicitly changed by the modified terms of the settlement agreement. *See* Trial Tr. at 54; Final Judgment and Termination Entry at 3. The final agreement was supported by the record.

**{¶ 24}** Having found that the settlement agreement was valid and supported by the record, Shia's first and second assignments of error are overruled.

### III. Attorney Fees

**{¶ 25}** In her third and final assignment of error, Shia claims that the trial court erred by awarding Waterfront attorney fees because there was no enforceable settlement

agreement and because it was contrary to the "American Rule." We have already concluded that there was a valid, enforceable settlement agreement between the parties, and for the reasons that follow, we further conclude that the attorney fee award was proper.

{¶ 26} Ohio follows the "American Rule," which states that the prevailing party in a civil case may not generally recover its attorney fees as part of the costs of litigation unless they are provided for by statute, the non-prevailing party acts in bad faith, or there is a contract that "specifically provides for the losing party to pay the prevailing party's attorney fees." *Wilborn v. Bank One Corp.*, 121 Ohio St.3d 546, 2009-Ohio-306, 906 N.E.2d 396, ¶ 17.

{¶ 27} Here, the award of attorney fees was expressly provided for on the record as follows:

Mr. Rickert: If further action is needed to enforce the terms of this Note, Defendant is reliable (sic) for Plaintiff's attorney fees in doing that…

Mr. Engel: I would – just on the attorney fee provision. I thought that was mutual?

Mr. Rickert: Yes, yes.

* * *

Mr. Engel: If someone has to sue to enforce, the winner –

Mr. Rickert: Correct.

Mr. Engel: - gets their fees paid.

Trial Tr. at 55. The record is clear that both parties understood that the winner of an

enforcement action would get attorney fees paid for by the losing side. Further, there was a similar requirement in the note. *See* August 13, 2013, promissory note at 1. Ohio common law would also provide attorney fees for Waterfront through an exception to the "American Rule."

{¶ 28} Attorney fees have been permitted as compensatory damages when the fees are incurred because of the breach of a settlement agreement. *See Raymond J. Schaefer, Inc. v. Pytik*, 6th Dist. Ottawa No. OT-09-026, 2010-Ohio-4714, ¶ 34; *Tejada-Hercules v. State Auto. Ins.* Co.,10th Dist. Franklin No. 08AP-150, 2008-Ohio-5066, ¶ 10; *Rayco Manufacturing, Inc. v. Murphy, Rogers, Sloss & Gambel*, 2019-Ohio-3756, 142 N.E.3d 1267, ¶ 4 (8th Dist.).

{¶ 29} The rationale behind this exception for allowing attorney fees expended as a result of enforcing a settlement agreement is that "any fees incurred after the breach of the settlement agreement were relevant to the determination of compensatory damages, including those fees [a party was] forced to incur by filing the action." *Tejada-Hercules* at ¶ 10; *Rayco* at ¶ 15 (because "attorney fees recoverable on a successful motion to enforce a settlement agreement are compensatory damages – rather than costs of litigation – the American Rule does not preclude their recovery even where none of the other exceptions to the American Rule applies.").

{¶ 30} We conclude that Waterfront was entitled to attorney fees under this rationale because the fees were incurred as a result of Shia's breach of the agreement. "When a party breaches a settlement agreement to end litigation and the breach causes a party to incur attorney fees * * *, those fees are attributable to and were incurred as the

result of [the breaching party's] breach of the settlement agreement, [and the non-breaching party] is entitled to recover those fees in order to make whole and compensate [it] for losses caused by [the] breach." *Shanker v. Columbus Warehouse Ltd. Partnership*, 10th Dist. Franklin No. 99AP-772, 2000 WL 726786, *5 (June 6, 2000).

{¶ 31} The trial court did not err by granting Waterfront attorney fees as such fees were provided for on the record, in the 2013 note, and through an exception to the "American Rule." The third assignment of error is overruled.

## IV.     Conclusion

{¶ 32} The judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

WELBAUM, J. and LEWIS, J., concur.

Copies sent to:

David M. Rickert
Dennis A. Lieberman
Bradley C. Smith
Johnna M. Shia
Michele D. Phipps
Christopher A. Watkins
Hon. Dale Crawford, Visiting Judge